******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

J. Y. *v.* M. R.*

(AC 44312)

Elgo, Moll and Suarez, Js.

*Syllabus*

The defendant mother appealed to this court from the trial court's adjudica-
tion of several postjudgment motions for modification of custody and
visitation orders relating to the parties' minor child and its issuance of
additional orders related to the same. After the plaintiff father filed a
custody application, the trial court approved an agreement between the
parties, who had never been married, which provided that they would
share joint legal custody of the child, with the child's primary residence
being with the mother, and set forth a parenting schedule. Approximately
one year later, the father filed a postjudgment motion to modify,
requesting an increase in overnight visits and that his residence be
designated as the child's primary residence for school purposes. There-
after, the parties executed stipulation agreements revising the parenting
schedule, which the trial court approved. The mother then filed a post-
judgment motion for modification, seeking to impose certain restrictions
on the father's parenting time. The trial court heard evidentiary hearings
on the parties' motions for modification. Thereafter, it filed interim
orders indicating, inter alia, that the parties would continue to share
joint legal and physical custody of the child and were required to comply
with the applicable rule of practice (§ 25-26 (g)) in filing any future
motions for modification. A few months later, in response to health
concerns relating to the COVID-19 pandemic, the mother filed an applica-
tion for an emergency ex parte order of custody, along with a second
postjudgment motion for modification, which requested that the court
temporarily deny the father visitation. The trial court declined to award
ex parte relief but ordered a hearing to be held on the application
and the motion. That hearing was postponed and never rescheduled.
Thereafter, the trial court denied the mother's second modification
motion and issued final orders relating to the parties' initial modification
motions, which incorporated the interim orders. The final orders pro-
vided, inter alia, that the parties would continue to share joint legal and
physical custody of the child, with the father's residence serving as the
child's primary residence for school purposes and required the parties
to file a request for leave pursuant to Practice Book § 25-26 (g), in the
event that they wished to modify the final orders. The mother appealed
and, after being granted leave by the trial court, filed two additional
postjudgment motions for modification, seeking to modify the final
orders with respect to the parenting schedule and the child's primary
residence for school purposes. Following a hearing, the trial court denied
the mother's additional modification motions, and the mother amended
her appeal to encompass that denial. *Held*:
1. The trial court did not commit error in issuing the interim orders or the
   final orders:
   a. The defendant mother's claim that the trial court improperly issued
   interim orders was moot: the interim orders ceased to exist after they
   were subsumed by the final orders, and, accordingly, there was no practi-
   cal relief that the trial court could afford the mother with respect to the
   interim orders; moreover, the "capable of repetition, yet evading review"
   exception to the mootness doctrine did not apply because the mother
   failed to demonstrate that there was a reasonable likelihood that the
   issue presented would arise again in the future.
   b. The defendant mother's claim that the trial court committed error in
   issuing the final orders was unavailing: in issuing the final orders, the
   court considered the child's best interests as required by the applicable
   statute ((Rev. to 2019) § 46b-56), and such orders were not fatally flawed
   merely because they incorporated the interim orders, which the mother
   argued were defective; moreover, the mother's alternative argument that,
   even if it is assumed that the interim orders properly modified the prior
   custody and visitation orders, the trial court applied the wrong legal
   standard in issuing the final orders was unavailing, as, at the time of

issuance, the court plainly stated that the interim orders were temporary in nature and that final orders disposing of the initial orders were forthcoming, and, accordingly, the interim orders did not constitute prior court orders that required a material change in circumstances for modification; furthermore, the mother failed to establish that the trial court abused its discretion in transferring the child's primary residence for school purposes from the mother to the plaintiff father because, in issuing its orders, the court did not engage in speculation but, rather, properly considered the child's best interests, and its determination was supported by the guardian ad litem's testimony and was reasonable despite the amount of time between the issuance of the order and the start of the child's schooling in light of the history of extensive litigation between the parties; additionally, the mother failed to demonstrate that the trial court abused its discretion in issuing the order pursuant to Practice Book § 25-26 (g), requiring the parties to seek leave of the court before filing motions for modification of the final orders for a period of five years because the order applied to both parties, the parties had filed numerous modification motions following the initial judgment, and the guardian ad litem had testified in favor of the order, considering it to be appropriate in light of the length of the litigation, the financial and emotional toll it was taking on the parties, and her belief that the child had been affected by the distress the litigation caused to the parties.

2. The trial court did not err in denying the defendant mother's two modification motions filed after the issuance of the final orders: that court applied the correct legal standard in denying the two modification motions, as it properly determined that there had been no material change in circumstances since the date the final orders were issued, and, in arguing that exigent circumstances, including the COVID-19 pandemic, warranted the court's consideration of circumstances prior to the issuance of the final orders, the mother was essentially attempting to use her motions to mount an improper collateral attack on the final orders; moreover, the mother's alternative argument, that the trial court improperly determined that she had failed to demonstrate that a material change in circumstances had occurred since the issuance of the final orders, was unavailing because the court was free to credit or reject all or part of the conflicting testimony regarding such change in circumstances that was presented by the parties.

3. The defendant mother's claim that the trial court improperly had denied her second modification motion, which she had filed between the issuance of the interim orders and the final orders, was moot: the only practical relief this court could have afforded the mother was a remand to the trial court with direction to conduct an evidentiary hearing, which would have been superfluous because the mother's second modification motion raised the same issues that were encompassed by one of the modification motions she filed after the issuance of the final orders, and the trial court conducted an evidentiary hearing on that motion, giving the mother the opportunity to be heard and to submit evidence as to those issues; accordingly, the mother already had received the relief that she was seeking.

Argued March 7—officially released October 11, 2022

*Procedural History*

Application for custody as to the parties' minor child, brought to the Superior Court in the judicial district of Waterbury and transferred to the judicial district of New Haven, where the court, *Klatt, J.*, rendered judgment in accordance with the parties' custody and parenting agreement; thereafter, the plaintiff filed a motion for modification; subsequently, the court, *Klau, J.*, issued an order modifying the judgment in accordance with the parties' agreement; thereafter, the defendant filed a motion for modification; subsequently, the court, *Klau, J.*, issued interim orders pending the issuance of final orders on the parties' respective pending motions for modification; thereafter, the court, *Price-Boreland, J.*, ordered that a hearing be held with respect to an

application for ex parte relief and a second motion for modification filed by the defendant; subsequently, the court, *Klau, J.*, issued final orders disposing of the plaintiff's motion for modification and the defendant's initial motion for modification and denied the defendant's second motion for modification, and the defendant appealed to this court; thereafter, after being granted leave by the court, *Goodrow, J.*, the defendant filed two additional motions for modification, which the court, *Price-Boreland, J.*, denied, and the defendant filed an amended appeal. *Appeal dismissed in part*; *affirmed*.

*Samuel V. Schoonmaker IV*, for the appellant (defendant).

*James J. Healy*, for the appellee (plaintiff).

*Opinion*

MOLL, J. In this custody dispute, the defendant, M. R., appeals from the decisions of the trial court adjudicating several postjudgment motions for modification of custody and visitation orders. On appeal, the defendant claims that the court improperly (1) issued interim orders pending its issuance of final orders vis-à-vis two motions for modification filed in 2018 and 2019, respectively, (2) issued final orders disposing of the two aforesaid motions for modification, (3) denied two motions for modification that she filed in 2021, following the issuance of the final orders, and (4) denied a motion for modification that she filed in 2020, in between the issuance of the interim orders and the final orders.[1] We dismiss, as moot, the portions of the appeal challenging the propriety of the interim orders and the denial of the defendant's motion for modification filed in 2020, and we affirm the remainder of the trial court's decisions.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff, J. Y., and the defendant, who never married, have a minor child who was born in April, 2016. In January, 2017, the plaintiff filed a custody application, requesting joint legal custody of the child and that the child's primary residence be with him. On September 29, 2017, the parties executed a custody and parenting agreement. The agreement provided, inter alia, that the parties would share joint legal custody of the child, with the child's primary residence being with the defendant, and set forth a parenting schedule. Pursuant to the parenting schedule, the child would have seven overnight visits with the plaintiff over the course of a recurrent four week schedule. The agreement further provided that, "[u]nless or until the [defendant] relocates to another school district, the [t]own of Cheshire shall be considered the child's primary town of residence for school purposes." The same day, the trial court, *Klatt, J.*, approved the agreement and incorporated its terms into the court's judgment rendered that day.

On October 17, 2018, the plaintiff filed a postjudgment motion to modify the September 29, 2017 judgment, requesting, inter alia, an increase in the number of the child's overnight visits with him from seven to fourteen and that his residence be designated as the child's primary residence for school purposes. On January 16, 2019, the parties executed a stipulation agreeing, inter alia, to a revised parenting schedule, which increased the number of the child's overnight visits with the plaintiff from seven to eight. On January 23, 2019, the court, *Tindill, J.*, approved the stipulation. On September 18, 2019, the parties executed an agreement further modifying the parenting schedule, increasing the number of the child's overnight visits with the plaintiff from eight to ten. The court, *Klau, J.*, approved the agreement on

the same day. On November 25, 2019, the defendant filed a postjudgment motion for modification, seeking, inter alia, to impose certain limitations and restrictions with respect to the plaintiff's parenting time.

In December, 2019, the court held three evidentiary hearings on the parties' respective October 17, 2018 and November 25, 2019 motions for modification (initial modification motions). On January 7, 2020, the defendant filed a motion to continue the evidentiary hearings for personal medical reasons. On January 9, 2020, the court ordered that a telephonic conference would be held on January 13, 2020, to address the motion for continuance. The court further ordered the parties' trial counsel to "be prepared to discuss whether a continuance should be contingent upon the court entering a temporary order adopting [a] proposed parenting schedule [submitted by the plaintiff]." The plaintiff's proposed parenting schedule increased the number of the child's overnight visits with him from ten to fourteen.

On January 13, 2020, during the telephonic conference, the court granted the defendant's motion for continuance and reserved its decision as to whether it would issue an interim order. The same day, the defendant filed a memorandum in opposition to the court issuing an interim order. On January 29, 2020, the plaintiff filed a motion for order requesting that the court adopt his proposed parenting schedule on a temporary basis. On February 6, 2020, the court held one additional evidentiary hearing on the initial modification motions,[2] and the parties' trial counsel presented closing arguments on February 13, 2020. Both parties submitted proposed orders. The plaintiff requested, inter alia, sole legal and physical custody, with the child attending school in the town in which he resided, which, at all relevant times, was Southington. The defendant sought, inter alia, joint legal custody, with the child's primary residence being with her and the child attending kindergarten in Cheshire, where the defendant lived.

On February 26, 2020, citing *Yontef* v. *Yontef*, 185 Conn. 275, 440 A.2d 899 (1981), the court issued interim orders (interim orders) pending the issuance of final orders on the initial modification motions.[3] The interim orders provided that (1) the parties continued to share joint legal custody of the child, (2) effective immediately, the parties were to share physical custody of the child in accordance with the plaintiff's proposed parenting schedule, (3) the parties were required to comply with Practice Book § 25-26 (g) in filing any future motions for modification, and (4) all prior custody and visitation orders "not inconsistent" with the temporary orders remained in full force and effect.[4]

On May 8, 2020, the defendant filed an application for an emergency ex parte order of custody, seeking temporary custody of the child with no visitation

allowed for the plaintiff. The defendant averred that, during the plaintiff's parenting time, the child was being left with third parties and the plaintiff was not following the then current guidelines set forth by the Centers for Disease Control and Prevention with regard to the nascent COVID-19 pandemic. Concurrently with the application for ex parte relief, the defendant filed a postjudgment motion for modification, requesting that the court temporarily deny the plaintiff visitation (May 8, 2020 modification motion).[5] The same day, the court, *Price-Boreland, J.*, declined to award ex parte relief but ordered that a hearing would be held on June 5, 2020, as to the application and the May 8, 2020 modification motion. Thereafter, the June 5, 2020 hearing was postponed and never rescheduled. On September 1, 2020, without conducting a hearing, the court, *Klau, J.*, denied the May 8, 2020 modification motion.

On September 1, 2020, the court issued a memorandum of decision that resolved the initial modification motions.[6] The court stated that, in addition to issuing related orders, it was incorporating the interim orders into its final orders disposing of the initial modification motions (final orders). The court ordered in relevant part that (1) the parties shared joint legal and physical custody of the child, with the plaintiff's residence serving as the child's primary residence for school purposes, (2) the plaintiff's proposed parenting schedule was adopted and approved, (3) any party seeking to modify the new custody and visitation orders within five years was required to file a request for leave pursuant to Practice Book § 25-26 (g), and (4) the new custody and visitation orders superseded "all prior inconsistent orders," whereas "[p]rior orders not inconsistent" with the new orders remained in full force and effect. On September 18, 2020, the defendant filed a motion to reargue, which the court denied on the same day.[7] On October 6, 2020, the defendant filed this appeal.[8]

On March 30, 2021, after being granted leave by the court, *Goodrow, J.*, in accordance with Practice Book § 25-26 (g) and the final orders, the defendant filed two postjudgment motions for modification, seeking to modify the final orders as to (1) the parties' parenting schedule and (2) the child's primary residence for school purposes (March 30, 2021 modification motions).[9] On April 22, 2021, the plaintiff filed objections. On August 11, 2021, following an evidentiary hearing, the court, *Price-Boreland, J.*, denied the March 30, 2021 modification motions. On August 30, 2021, the defendant filed a motion for reconsideration and reargument, which the court denied on September 1, 2021. The defendant subsequently amended her appeal to encompass the court's denials of the March 30, 2021 modification motions.[10] Additional facts and procedural history will be set forth as necessary.

Before addressing the defendant's claims, we set

forth the following relevant legal principles. "General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. General Statutes (Rev. to 2019) § 46b-56 (c) directs the court, when making or modifying any order regarding the custody, care, education, visitation and support of children, to consider the best interests of the child, and in doing so [the court] may consider, but shall not be limited to, one or more of [sixteen enumerated] factors[11] . . . . The court is not required to assign any weight to any of the factors that it considers . . . ." (Footnote in original; internal quotation marks omitted.) *Dolan* v. *Dolan*, 211 Conn. App. 390, 398–99, 272 A.3d 768, cert. denied, 343 Conn. 924, 275 A.3d 626 (2022).

Before modifying a custody order, "a court must satisfy two requirements. First, modification of a custody award must be based upon either a material change [in] circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child. . . . Second, the court shall consider the best interests of the child and in doing so may consider several factors. . . . Before a court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child. . . . These requirements are based on the interest in finality of judgments . . . and the family's need for stability." (Footnotes omitted; internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, 167 Conn. App. 505, 511–12, 146 A.3d 26 (2016); see also *Cleveland* v. *Cleveland*, 161 Conn. 452, 459–60, 289 A.2d 909 (1971) (material changes in circumstances requirement was developed, in part, "to give effect to the principle of res judicata"). "The burden of proving a change to be in the best interest of the child rests on the party seeking the change." (Internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, supra, 512. "The power of the trial court to modify the existing order does not . . . include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . . [I]ts inquiry is necessarily confined to a comparison between the current conditions and the last court order." (Citations omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 738, 638 A.2d 1060 (1994).

In considering whether to modify visitation orders, as opposed to custody orders, a court "is not required to find as a threshold matter that a change in circumstances has occurred. . . . Instead, [i]n modifying an order concerning visitation, the trial court shall be guided by the best interests of the child . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Balaska* v. *Balaska*, 130 Conn. App. 510, 515–16, 25 A.3d 680 (2011).

"Our standard of review of a trial court's decision regarding custody [and] visitation . . . orders is one of abuse of discretion. . . . [T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties [firsthand] and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) *Dolan* v. *Dolan*, supra, 211 Conn. App. 399–400. "Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) *Coleman* v. *Bembridge*, 207 Conn. App. 28, 34, 263 A.3d 403 (2021).

I

We first address the defendant's claims that, as to the initial modification motions, the trial court committed error in issuing (1) the interim orders and (2) the final orders. We consider each claim in turn.

A

The defendant asserts that the court improperly issued the interim orders pursuant to *Yontef* v. *Yontef*, supra, 185 Conn. 275.[12] The defendant maintains that *Yontef* does not authorize a court, postjudgment, to modify custody and visitation orders on an interim basis without first satisfying the statutory requirements of § 46b-56. In addition to addressing the merits of this claim, the plaintiff argues that this claim is moot because the interim orders were superseded by the final orders. We agree with the plaintiff that the claim is moot.[13]

"Mootness implicates [the] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Because mootness implicates subject matter jurisdiction, it presents a question

of law over which our review is plenary. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition or affairs between the parties. . . . A case is moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) *Barber* v. *Barber*, 193 Conn. App. 190, 220–21, 219 A.3d 378 (2019).

In the present case, the interim orders, issued on February 26, 2020, ceased to exist after they were subsumed by the final orders issued on September 1, 2020. Thus, we conclude that there is no practical relief that we may afford the defendant vis-à-vis the interim orders, and, therefore, her claim challenging the interim orders is moot. See, e.g., *Schult* v. *Schult*, 40 Conn. App. 675, 692, 672 A.2d 959 (1996) (claim regarding temporary custody order was moot when order merged with final dissolution decree), aff'd, 241 Conn. 767, 699 A.2d 134 (1997).

The defendant argues that her claim is not moot because, in incorporating the interim orders into the final orders, the court "reiterat[ed]" the interim orders and left them "largely unchanged." As we have explained, however, the interim orders became inoperative following the issuance of the final orders. Insofar as the defendant takes issue with the interim orders as integrated into the final orders, her redress is to challenge the propriety of the final orders. See part I B of this opinion.

The defendant further argues that, even if her claim is moot, it is subject to appellate review under the "capable of repetition, yet evading review" exception to the mootness doctrine. We disagree.

"[F]or an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995).

Focusing on the second prong of the exception, the analysis "entails two separate inquiries: (1) whether the question presented will recur at all; and (2) whether the interests of the people likely to be affected by the question presented are adequately represented in the current litigation. A requirement of the likelihood that a question will

recur is an integral component of the 'capable of repetition, yet evading review' doctrine. In the absence of the possibility of such repetition, there would be no justification for reaching the issue, as a decision would neither provide relief in the present case nor prospectively resolve cases anticipated in the future." Id., 384. The second prong "does not provide an exception to the mootness doctrine when it is merely *possible* that a question could recur, but rather there must be a *reasonable likelihood* that the question presented in the pending case will arise again in the future . . . ." (Emphasis in original; internal quotation marks omitted.) *Russo* v. *Common Council*, 80 Conn. App. 100, 110, 832 A.2d 1227 (2003).

In arguing that the second prong of the exception is satisfied in the present case, the defendant broadly asserts that, "if allowed, family courts [in reliance on *Yontef*] will render many more 'interim' modifications in this and other custody cases . . . ." Although it is *possible* that this issue will reoccur, the defendant has not demonstrated that there is a *reasonable likelihood* that it will. Her concern is purely speculative. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009) ("speculation and conjecture . . . have no place in appellate review" (internal quotation marks omitted)). Accordingly, we conclude that the "capable of repetition, yet evading review" exception does not apply to enable us to review the defendant's moot claim.

B

The defendant next claims that the court committed error in issuing the final orders. The defendant raises four contentions: (1) the final orders are "taint[ed]" because they incorporate the allegedly flawed interim orders; (2) assuming that the interim orders operated to modify the prior custody and visitation orders, the court applied the wrong legal standard in failing to consider the present best interests of the child and whether circumstances had changed since the issuance of the interim orders; (3) the court abused its discretion in transferring the child's primary residence for school purposes from the defendant to the plaintiff, and (4) the court abused its discretion in ordering the parties, for a period of five years, to comply with Practice Book § 25-26 (g) in filing motions to modify the final orders. These contentions are unavailing.

1

The defendant's first contention is that the final orders are fatally flawed because they incorporate the interim orders, which, as summarized in part I A of this opinion, the defendant maintains were defective. The defendant argues that the defects that plagued the interim orders carried over into the final orders. We disagree.

Resolving the defendant's claim requires us to construe the final orders. "As we previously set forth in this opinion, [o]ur deferential standard of review [in domestic relations cases] . . . does not extend to the court's interpretation

of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal. . . . Moreover, [t]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary." (Internal quotation marks omitted.) *Coleman* v. *Bembridge*, supra, 207 Conn. App. 34.

In issuing the final orders, the court cited the statutory factors delineated in General Statutes (Rev. to 2019) § 46b-56 (c) and considered the child's best interests. This analysis applied to the final orders in toto, including the portion of the final orders that assimilated the interim orders. In other words, in incorporating the interim orders into the final orders, the court considered the child's best interests as required by statute. Even if we assume arguendo that the court committed a legal error in issuing the interim orders, that error was not transferred to the final orders simply by virtue of the fact that the final orders contain the interim orders. Accordingly, we reject the defendant's argument.

### 2

The defendant's second contention is that, assuming that the interim orders functioned to modify the prior custody and visitation orders, the court applied the wrong legal standard in issuing the final orders because the court neither considered whether there had been a material change in circumstances since February 26, 2020, when the court issued the interim orders, nor examined the present best interests of the child. The crux of the defendant's argument is that the interim orders, when issued, became the "prior court order[s]" for purposes of any future modifications. The defendant asserts that, because no evidentiary record was developed for the period between the issuance of the interim orders and the final orders, the court had no basis on which to issue the final orders. We are not persuaded.

The question of whether the court applied the correct legal standard is a question of law subject to plenary review. See *In re Paulo T.*, 213 Conn. App. 858, 867, 279 A.3d 766, cert. granted, 344 Conn. 904,     A.3d     (2022). "Before a court may modify a custody order, it must find that there has been a material change in circumstances *since the prior order of the court*, but the ultimate test is the best interests of the child." (Emphasis added; internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, supra, 167 Conn. App. 511–12. We disagree with the defendant's legal premise that, at the time that the final orders were issued, the interim orders constituted the "prior court order[s]" in effect. In issuing the interim orders, which followed the close of evidence on the initial modification motions, the court plainly stated that the interim orders were temporary in nature and that final orders disposing of the initial modification motions were forthcoming. We cannot conclude that such temporary orders established the starting point for the court's modification analysis vis-à-vis the final orders. Accordingly, the defendant's argu-

ment fails.

3

The defendant's third contention is that the court abused its discretion in transferring the child's primary residence for school purposes from the defendant to the plaintiff. The defendant argues that the modified school residence order was not in the child's best interests and that the court speculated as to the suitability of the school district in which the plaintiff lives, particularly given that the child would not start attending kindergarten until the fall of 2021. We disagree.

The following additional facts and procedural history are relevant. The parties' 2017 custody and parenting agreement, as incorporated into the September 29, 2017 judgment, provided that, unless or until the defendant relocated, the town of Cheshire was designated as the child's primary residence for school purposes. In their respective proposed orders filed in connection with the initial modification motions, the parties separately requested that their respective residences be deemed as the child's primary residence and that the child attend school in their respective towns.

During the evidentiary hearings held on the initial modification motions, the guardian ad litem for the minor child testified that it was "appropriate" for the court to designate the child's primary residence for school purposes in advance of the child attending kindergarten in the fall of 2021 in light of, in part, the parties' lengthy litigation history. The guardian ad litem further testified that deeming the plaintiff's residence as the child's primary residence for school purposes would be "appropriate" if the court was "concern[ed] about [his] position in the child's life" and wanted to "fortify that position a little bit for him . . . ." Along those lines, the guardian ad litem testified, inter alia, that she was "concerned that [the defendant] doesn't seem to value . . . [the plaintiff's] role as [the child's] father," was "concerned for [the child's] future relationship with [the plaintiff] if [the defendant] cannot embrace in a way that [the child] can see and feel the importance of [the plaintiff] in [the child's] life," did not believe that the defendant was able to "acknowledge that . . . [the plaintiff] has redeemable qualities as a parent," and did not believe that the defendant "[saw] the value to [the plaintiff's] time with [the child] . . . to the same degree that she values her own time as a parent with [the child]."

The guardian ad litem also offered testimony comparing the Cheshire and Southington school districts. She testified that both towns had full day kindergarten programs starting at approximately the same time and that, although Cheshire's school system ranked higher than Southington's school system on the basis of a report that she had reviewed, the data indicated that students from both schools were scoring "very close" on various tests.[14]

After hearing the parties' closing arguments on February 13, 2020, the court stated on the record that, "[g]iven the history of the litigation between the parties, I do think it is better, even at this point, rather than waiting to the fall [of] 2021 when [the child] starts school, to make a decision [as to the child's primary residence for school purposes] one way or the other. I really don't want to leave doors open that sort of invite issues in the future. I think it needs to be decided, subject of course always to the parties' right to seek modifications, setting aside the issue of the request [for] leave [requirement of Practice Book § 25-26 (g)]."

In the final orders, the court transferred the child's primary residence for school purposes from the defendant to the plaintiff. Before issuing its orders, the court found in relevant part that "[t]he parties' relationship effectively ended about ten months after their [child's] birth in April, 2016. The [defendant] was, and still is, uncertain about the role she wants the [plaintiff] to play in the child's life." The court further found that, although "the [defendant] believes it is important for [the child] to have a father figure in [the child's] life, it is questionable whether she believes that the [plaintiff] should play that role. Obviously, this leads to significant tensions in the parties' ongoing relationship."

We conclude that the court, in transferring the child's primary residence for school purposes from the defendant to the plaintiff, properly considered the child's best interests and did not engage in speculation. Although the child was not scheduled to begin kindergarten until the fall of 2021, approximately one year following the issuance of the final orders, the court reasonably determined that issuing the modified school residence order immediately was proper "[g]iven the history of the litigation between the parties" and to avoid "leav[ing] doors open that sort of invite issues in the future." This determination was buttressed by the guardian ad litem's testimony advocating for swift action on the school residence issue. Moreover, against the backdrop of the guardian ad litem's testimony that designating the plaintiff's residence as the child's primary residence for school purposes would be "appropriate" if the court was "concern[ed] about [his] position in the child's life" and wanted to "fortify that position a little bit for him," the court found that the defendant was "uncertain about the role she wants the [plaintiff] to play in the child's life" and that it was "questionable" whether the defendant believed that the plaintiff should be a "father figure" for the child. Finally, the record contained evidence indicating that the Southington and Cheshire school systems, although not identical, were comparable in educational quality.

In sum, we conclude that the defendant has not established that the court abused its discretion in modifying the prior custody orders by transferring the child's primary residence for school purposes from the defendant to the

plaintiff.

4

The defendant's fourth contention is that the court abused its discretion in ordering the parties, for a period of five years, to seek leave of the court to file motions for modification of the final orders in accordance with Practice Book § 25-26 (g). The defendant maintains that an order pursuant to § 25-26 (g) can be issued only in cases presenting " 'extreme, compelling situation[s].' " The defendant argues that the court did not find that the present matter constituted an " 'extreme, compelling [situation]' " and that, even if it had, the record does not support such a finding. We are not persuaded.

Practice Book § 25-26 "governs a litigant's ability to file a postdissolution motion for modification of a custody or visitation order." *Morera* v. *Thurber*, 162 Conn. App. 261, 269, 131 A.3d 1155 (2016). Section 25-26 (g) provides in relevant part: "[U]pon or after entry of a judgment or final order of custody and/or visitation . . . the judicial authority may order that any further motion for modification of a final custody or visitation order shall be appended with a request for leave to file such motion . . . . The specific factual and legal basis for the claimed modification shall be sworn to by the moving party or other person having personal knowledge of the facts recited therein. If no objection to the request has been filed by any party within ten days of the date of service of such request on the other party, the request for leave may be determined by the judicial authority with or without hearing. If an objection is filed, the request shall be placed on the next short calendar, unless the judicial authority otherwise directs. At such hearing, the moving party must demonstrate probable cause that grounds exist for the motion to be granted. . . ."

In proposing that a Practice Book § 25-26 (g) order may be issued in " 'extreme, compelling situation[s]' " only, the defendant cites several appellate cases addressing either a trial court's refusal to consider motions or a trial court's orders restricting a party's ability to file motions. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 484–85, 706 A.2d 960 (1998) (recognizing that exceptions to general rule that court must consider and decide "on a reasonably prompt basis" all motions properly before it may exist in "extreme, compelling situation," such as case involving harassing or vexatious litigation, and concluding that record did not support conclusion that circumstances existed to justify court's refusal to consider motions); see also *Ramin* v. *Ramin*, 281 Conn. 324, 339, 915 A.2d 790 (2007) (quoting *Ahneman* in concluding that case did not present " 'extreme and compelling circumstance' " supporting court's refusal to consider motion); *Eisenlohr* v. *Eisenlohr*, 135 Conn. App. 337, 346–48, 43 A.3d 694 (2012) (concluding that court did not abuse its discretion in restricting defendant's ability to file motions for modification of custody and parenting access orders in light of

"troubling facts" of case, including court's findings that defendant had failed to comply with prior court orders and had engaged in "lengthy pattern of contemptuous conduct"); *Strobel* v. *Strobel*, 92 Conn. App. 662, 665, 886 A.2d 865 (2005) (order prohibiting parties from filing motions or pleadings without prior approval was deemed "praiseworthy" when record reflected that parties had filed "barrages of repetitive and abusive motions in an apparently ceaseless war of hostility and vindictiveness toward one another and that those motions are not only abusive to the system but, more importantly, to their now teenage son"). We do not construe these cases as curbing a court's discretion to impose filing restrictions by limiting such orders to cases with circumstances deemed to be extreme and compelling. Indeed, neither *Eisenlohr* nor *Strobel*, which were decided after *Ahneman*, cites *Ahneman* or instructs that orders imposing filing restrictions are reserved for such cases. See *Eisenlohr* v. *Eisenlohr*, supra, 346–48; *Strobel* v. *Strobel*, supra, 665.

We perceive no clear abuse of discretion underlying the court's inclusion of the Practice Book § 25-26 (g) order, which applies to both parties, in the final orders.[15] The parties' child was nearly one and one-half years old when the September 29, 2017 judgment was rendered, and the child was four years old at the time of the final orders. As the court stated in issuing the final orders, less than one year following the September 29, 2017 judgment, the parties began filing "[a] slew of . . . motions" concerning the child. Moreover, during the evidentiary hearings held on the initial modification motions, the guardian ad litem for the minor child testified in favor of the court issuing a § 25-26 (g) order, considering such an order to be "an appropriate mechanism to use" in light of the length of the litigation, the financial and emotional toll of the litigation on the parties, and the guardian ad litem's belief that the child was "not unscathed by the distress that [the parties] ha[d] gone through." See *Eisenlohr* v. *Eisenlohr*, supra, 135 Conn. App. 347 n.5 (in concluding that trial court did not abuse its discretion in imposing filing restrictions on defendant, this court cited guardian ad litem's testimony that case warranted imposition of such order and that such order " 'would be best' " for minor child).

"An appellant who seeks to reverse the trial court's exercise of judicial discretion assumes a heavy burden." (Internal quotation marks omitted.) Id., 347. We conclude that the defendant has failed to demonstrate that the court abused its discretion in issuing the Practice Book § 25-26 (g) order.[16]

## II

We next turn to the defendant's claim that the trial court improperly denied her March 30, 2021 modification motions. The defendant asserts that the court (1) applied the wrong legal standard in denying these motions or, alternatively, (2) incorrectly determined that there had

not been a material change in circumstances since the issuance of the final orders. We disagree.

The following additional facts and procedural history are relevant. In the March 30, 2021 modification motions, the defendant sought to modify the portions of the final orders incorporating the plaintiff's proposed parenting schedule and designating the plaintiff's residence as the child's primary residence for school purposes. As to the parenting schedule, the defendant argued that (1) in adopting and approving the parenting schedule in the final orders, the court had no evidence before it regarding the COVID-19 pandemic, and (2) the plaintiff was unavailable to spend sufficient time with the child, frequently leaving the child with his girlfriend or family members during his parenting time. As to the school residence order, the defendant argued that (1) at the time it issued the final orders, the court had no evidence before it regarding (a) the suitability of the Southington school system or (b) how the Cheshire and Southington school systems were addressing the COVID-19 pandemic, and (2) the child was developing strong ties with the town of Cheshire. In her proposed orders filed in connection with the March 30, 2021 modification motions, the defendant requested that the court, inter alia, (1) adopt a new parenting schedule reducing the number of the child's overnight visits with the plaintiff, (2) order that the child would attend kindergarten in Cheshire, and (3) order that the parties would continue to share joint legal custody, with the defendant's residence being designated as the child's primary residence.

On August 11, 2021, the court, *Price-Boreland, J.*, held an evidentiary hearing on the March 30, 2021 modification motions, during which the plaintiff and the defendant testified. At the conclusion of the hearing, the court orally denied the March 30, 2021 modification motions. The same day, the court issued a written order stating that, in denying the March 30, 2021 modification motions, it determined that "there has been no material or substantial change in circumstances since September 1, 2020, when [the final orders were] entered."

A

The defendant first contends that the court applied the wrong legal standard in denying her March 30, 2021 modification motions. The defendant maintains that the court should have considered whether there had been a material change in circumstances since February or March, 2020,[17] rather than September 1, 2020, when the final orders were issued. We are not persuaded.

Whether the court applied the correct legal standard is a question of law subject to plenary review. See *In re Paulo T.*, supra, 213 Conn. App. 867. The defendant acknowledges the well established legal principles requiring courts, when entertaining motions to modify custody, to compare the current circumstances to those that

existed at the time of the prior court orders. See *Petrov* v. *Gueorguieva*, supra, 167 Conn. App. 511–12. The defendant posits, however, that the "exigent circumstances" of this case require us to recognize an exception to the settled rule governing modifications of custody orders and to conclude that the court committed error by not examining the circumstances that existed prior to the final orders. The defendant cites "numerous impediments" that arose between February, 2020, and September, 2020, that deprived her of "an 'adequate opportunity to litigate . . . fully'" the initial modification motions. These "impediments" include (1) emergency orders issued by the executive and judicial branches in response to the COVID-19 pandemic affecting court operations, (2) the court's denial on August 19, 2020, of a motion that she filed on March 16, 2020, seeking to open the evidence as to the initial modification motions,[18] and (3) the court's failure to conduct an evidentiary hearing prior to denying her May 8, 2020 modification motion.[19] The defendant further argues that the evidentiary record vis-à-vis the final orders contained no evidence regarding the effects of the COVID-19 pandemic, such that, by not considering circumstances that existed prior to the final orders, the court "forever overlook[ed] seven of the most tumultuous months in the history of parenting."

The defendant's arguments are unavailing. In essence, the defendant is attempting to use her March 30, 2021 modification motions to mount a collateral attack on the final orders, which is a maneuver that cannot be countenanced. See *Borkowski* v. *Borkowski*, supra, 228 Conn. 738 ("[t]he power of the trial court to modify the existing order does not . . . include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal" (citation omitted)). The March 30, 2021 modification motions sought to modify portions of the final orders issued on September 1, 2020, and the court, in accordance with the law, correctly compared the current circumstances with those existing as of September 1, 2020. Notwithstanding the unique conditions created by the onset of the COVID-19 pandemic, it would strain logic for us to conclude that, in deciding whether to modify the final orders issued on September 1, 2020, the court committed error by failing to analyze the circumstances that existed prior to September 1, 2020.

In sum, we conclude that the court applied the correct legal standard in denying the March 30, 2021 modification motions.

B

In the alternative, the defendant asserts that the court improperly determined that she failed to demonstrate that a material change in circumstances had occurred since the issuance of the final orders. The defendant argues that "[t]he record shows the onset of [the COVID-19] pandemic, disputes over health and safety of the minor child, school closings, and the parties using self-help

because existing orders were insufficient," such that the court could not reasonably have determined that there had been no material change in circumstances. We disagree.

The following additional facts and procedural history are relevant. The defendant offered testimony during the August 11, 2021 evidentiary hearing. As to the parties' child, who was five years old at the time of the hearing, the defendant testified that (1) the child was experiencing difficulties with respect to transitions from the defendant's home to the plaintiff's home, feeling "stressed," "upset," and "traumatized" the day before the start of the plaintiff's parenting time and "beg[ging]" to stay home with her, (2) the child was struggling to sleep at the plaintiff's home, (3) the plaintiff oftentimes left the child with his girlfriend or others during his parenting time, and (4) the plaintiff, who is employed as a firefighter and a landscaper, had started working more hours, and the defendant anticipated that, as a result of his increased work schedule, the plaintiff would have future availability issues, thereby creating inconsistencies in the parties' parenting schedule. With respect to the school issue, the defendant testified that (1) her research indicated that Cheshire had a better school system than Southington, (2) the child expressed a desire to attend school in Cheshire, and (3) all of the child's friends in Cheshire were attending kindergarten in Cheshire. The defendant further testified that the child participated in various extracurricular activities in Cheshire. With regard to the COVID-19 pandemic, the defendant testified that she was concerned about the child's well-being in light of potential disruptions in the parties' parenting schedule stemming from the pandemic, particularly if the child had to attend school part-time or be subject to remote learning in the fall of 2021. The defendant further testified that, during the pandemic, while the plaintiff continued to work full-time, she worked from home and watched the child when the child's daycare was closed.

The plaintiff, who also testified during the evidentiary hearing, disputed most of the defendant's testimony. He testified that neither his career nor his work schedule had changed since the issuance of the final orders. He further testified that he never left the child with strangers and that, although on occasion his sisters watched the child if he had to "run out . . . for an hour or two," he did not routinely leave the child with his significant other or family members. As to the child, he testified that the child was not a heavy sleeper in general but that the child was "always . . . happy when [he woke the child] up," and he disagreed with the defendant's characterization of the child being "traumatized" to go to his home. With respect to the school issue, the defendant testified that he was not concerned about the child making friends in Southington, that he lived one quarter of a mile from the school that he planned for the child to attend, and that he had no intent to relocate. As to the COVID-19 pandemic,

the plaintiff testified that there was a time when the child's daycare was closed as a result of the pandemic but that the parties "just worked it out amongst [themselves] and kind of co-parented . . . ."

At the conclusion of the evidentiary hearing, the court stated: "The court has listened to the testimony and considers some, but not all, of the testimony to be credible. The court takes into consideration that there was a trial held for a four day period [on the initial modification motions] in which the court made some decisions after some significant consideration of the circumstances. At that point [the court] had the opportunity to hear extensive testimony, view the witnesses, and come to some final decision. I think at that time the court took into consideration that the [plaintiff] does live in Southington and is employed as a firefighter and a landscaper. And to the degree that the landscaping business . . . has expanded . . . the reality is that that sometimes happens as parents and we make the necessary judgment about how we ensure that our child continues to be appropriately cared for." In its written order denying the March 30, 2021 modification motions, the court concluded that there had been no substantial or material change in circumstances since the issuance of the final orders.

On the basis of the record before us, we conclude that the court reasonably determined that the defendant failed to demonstrate a material change in circumstances since the issuance of the final orders warranting modification. Faced with conflicting testimony from the parties, "the court was free to credit or reject all or part of the testimony [presented] . . . . On review, we do not reexamine the court's credibility assessments." *Zilkha* v. *Zilkha*, 167 Conn. App. 480, 489, 144 A.3d 447 (2016). Thus, we conclude that the court did not abuse its discretion in denying the March 30, 2021 modification motions.

### III

Last, we address the defendant's claim that the trial court improperly denied her May 8, 2020 modification motion. The defendant's sole argument is that the court failed to hold an evidentiary hearing before denying the motion. The plaintiff, in addition to disagreeing with the merits of the defendant's claim, argues that this claim has been rendered moot, inter alia, by virtue of the August 11, 2021 evidentiary hearing held on the defendant's March 30, 2021 modification motions. We agree with the plaintiff that the claim is moot.

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy

must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *State*, 209 Conn. App. 741, 753, 269 A.3d 790 (2022).

The following additional facts and procedural history are relevant. In the May 8, 2020 modification motion, the defendant requested that the plaintiff temporarily be denied visitation with the child because he allegedly had been "continu[ing] to put the health and safety of the child at risk daily." In the affidavit accompanying her corresponding application for an ex parte order of custody, the defendant averred in relevant part that (1) the plaintiff was not abiding by guidelines issued at the time by the Centers for Disease Control and Prevention in relation to the COVID-19 pandemic in that he was not social distancing or wearing masks or gloves when in the company of others, thus putting himself and the child at risk, and (2) the plaintiff was leaving the child with third parties for extended periods of time during his parenting time. In conjunction with its denial of the defendant's request for ex parte relief, the court, *Price-Boreland, J.*, ordered a hearing to be held on June 5, 2020, on the application as well as the May 8, 2020 modification motion; however, as a result of the pandemic, that hearing was postponed and never rescheduled. On September 1, 2020, the court, *Klau, J.*, denied the May 8, 2020 modification motion without conducting a hearing.

While the original appeal filed on October 6, 2020, was pending, the defendant filed the March 30, 2021 modification motions. One of those motions sought to modify the parties' parenting schedule on the basis of (1) the COVID-19 pandemic and (2) assertions that the plaintiff regularly was leaving the child in the care of his girlfriend or family members during his parenting time. On August 11, 2021, the court held an evidentiary hearing on the March 30, 2021 modification motions and denied both motions on the same day.

With respect to the defendant's claim vis-à-vis the denial of the May 8, 2020 modification motion, the only practical relief that we could afford her is a remand to the trial court with direction to conduct an evidentiary hearing. Under the circumstances of this case, however, we conclude that such relief would be superfluous. The defendant's March 30, 2021 modification motion concerning the parties' parenting schedule raised the same issues encompassed by the May 8, 2020 modification motion, namely, whether modification was warranted in light of (1) the COVID-19 pandemic, in particular its effect on the health and safety of the child, and (2) assertions that the plaintiff was leaving the child with third parties during his parenting time. The court conducted an evidentiary

hearing on the March 30, 2021 modification motion, thereby giving the defendant an opportunity to be heard and to submit evidence as to those issues. Put simply, in effect, the defendant has received the relief that she seeks as to the denial of her May 8, 2020 modification motion, thereby rendering her claim moot.[20] See, e.g., *Wilkens* v. *Wilkens*, 10 Conn. App. 576, 579–80, 523 A.2d 1371 (1987) (claim raised challenging "correctness of" evidentiary hearing held on defendant's first motion to modify pendente lite unallocated alimony and support order was deemed moot because defendant had been afforded relief by virtue of evidentiary hearing held, during pendency of appeal, on second motion to modify).

The portions of the appeal taken from the court's February 26, 2020 decision issuing the interim orders and the court's September 1, 2020 denial of the defendant's May 8, 2020 postjudgment motion for modification are dismissed as moot; the decisions are affirmed in all other respects.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] For ease of reference, we address the defendant's claims in a different order than they are presented in her appellate briefs.

[2] Prior to the evidentiary hearings held in December, 2019, the court conducted several evidentiary hearings on certain motions for contempt that are not relevant to this appeal. The parties and the court agreed that the evidentiary record as to the initial modification motions would include the evidence introduced during the contempt proceedings.

[3] In his proposed orders filed in relation to the initial modification motions, the plaintiff requested that the court issue "an immediate interim postjudgment order in accordance with the [plaintiff's proposed orders] regarding custody and parenting access. [The plaintiff asserted that] [t]he court ha[d] authority to do so pursuant to [*Yontef*] . . . ."

[4] The court initially issued the interim orders on February 21, 2020. On February 24, 2020, the plaintiff filed a motion, which the court treated as a motion to reargue, requesting that the court alter a portion of the interim orders identifying the start date of the temporary parenting schedule. On February 26, 2020, the court vacated the February 21, 2020 interim orders and issued the operative interim orders.

[5] The defendant filed the application seeking ex parte relief and the May 8, 2020 modification motion as a self-represented party.

[6] The September 1, 2020 decision reflects that, in addition to the initial modification motions, the court resolved a postjudgment motion that the defendant filed on August 2, 2018, seeking to modify the parties' parenting schedule. In her principal appellate brief, however, the defendant states that the August 2, 2018 motion had been disposed of by stipulations executed by the parties and was no longer at issue at the time of the evidentiary hearings held on the initial modification motions. Whether the defendant's August 2, 2018 motion was properly before the court does not affect our resolution of the defendant's claims on appeal, and, therefore, we need not discuss the issue further.

[7] On September 18, 2020, the defendant also filed (1) a motion for articulation, (2) a motion to open, vacate, and/or modify, and (3) a motion to correct, all of which were substantively similar to her motion to reargue. The court denied these motions.

[8] On July 16, 2021, counsel for the guardian ad litem for the minor child filed a statement adopting the appellate brief filed by the plaintiff. See Practice Book § 67-13.

[9] On March 10, 2021, the defendant filed requests for leave to file the March 30, 2021 motions for modification, which the court granted on March 24, 2021.

[10] Following the September 29, 2017 judgment, the parties filed other postjudgment motions for modification not mentioned in this opinion, none of which is relevant to this appeal.

[11] "The statutory factors are as follows: '(1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b.' General Statutes (Rev. to 2019) § 46b-56 (c)." *Dolan* v. *Dolan*, 211 Conn. App. 390, 398–99 n.6, 272 A.3d 768, cert. denied, 343 Conn. 924, 275 A.3d 626 (2022).

[12] As this court recently summarized, "[i]n *Yontef*, our Supreme Court noted that pendente lite custody orders do not survive the rendition of a judgment and that the judgment itself, being automatically stayed by operation of Practice Book (1981) § 3065 (now § 61-11), is not binding for twenty days. *Yontef* v. *Yontef*, supra, 185 Conn. 291. The court further noted that, '[i]n this twenty-day gap period, the parties arguably may revert to their common law rights, under which both are entitled, without preference, to take custody.' Id. The court found that such a resolution was both 'unseemly' and 'inconsistent with the concern, repeatedly enunciated in the statutes and the cases, for the best interests of the children.' Id. The court therefore advised that '[a] trial court rendering a judgment in a disputed custody case should . . . consider entering protective orders sua sponte to ensure an orderly transition that protects the primary interests of the children in a continuous, stable custodial placement.' Id., 291–92.

"More specifically, the court stated: 'In the interest of minimizing the emotional trauma so often imposed upon the children of divorce, a trial court should, at or before the time of its judgment, inquire whether its custody order is apt to be acceptable to the parties or is apt to be further litigated upon appeal. If an appeal appears likely, the court should enter whatever interim postjudgment order it deems most appropriate, in the exercise of its broad discretion, taking into consideration the needs of the minor children for continuity, stability and well-being as well as the need of the parent who appeals for a fair opportunity fully to present his or her case. These legitimate needs are not, in all probability, apt to be protected if dissatisfied parties are able to intervene unilaterally, without judicial supervision, to effect changes in custody pending appeal. A court exercising its equitable jurisdiction with regard to custody has the duty to assure itself that its judgment will be implemented equitably to serve the best interests of the children for the near as well as for the more distant future.' Id., 293–94." (Footnote omitted.) *Thunelius* v. *Posacki*, 193 Conn. App. 666, 687–89, 220 A.3d 194 (2019).

As this court further explained, "[our Supreme Court's] concern in *Yontef* was to ensure an orderly transition [from prejudgment status to postjudgment status] that protects the primary interests of the children in a continuous, stable custodial placement during the period in which the enforcement of the judgment is stayed. . . . In 1986, however, Practice Book § 61-11 was amended to exclude custody and visitation orders from operation of the automatic stay

of execution provision. . . . Such orders, once issued, are now immediately enforceable, and, thus, there is no longer a gap period between pendente lite custody orders and the final orders. . . . Thus . . . *Yontef*-type protective orders may be superfluous in most cases involving issues of custody and visitation." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 690 n.20.

[13] The plaintiff also argues that (1) the defendant did not appeal from the interim orders, (2) any such appeal would be subject to dismissal for lack of a final judgment, and (3) the defendant did not object to the interim orders and, thus, has waived her claim on appeal. We note that the defendant's appeal form reflects that her original appeal, filed on October 6, 2020, encompassed the interim orders. As to the plaintiff's remaining arguments, we need not address them further in light of our conclusion that the defendant's claim is moot.

[14] During an evidentiary hearing held on December 18, 2019, while subject to direct examination by the plaintiff's trial counsel, the guardian ad litem testified as to research that she had performed comparing the Cheshire and Southington school districts. The defendant's trial counsel moved to strike that testimony on the basis that the guardian ad litem was testifying from facts not in evidence, and the court ordered that testimony to be stricken. During subsequent evidentiary hearings held on December 19, 2019, and February 6, 2020, on cross-examination, the defendant's trial counsel asked the guardian ad litem about the research that she had performed regarding the Cheshire and Southington school districts. The guardian ad litem proceeded to testify as to her research. The defendant's trial counsel did not move to strike that testimony.

[15] Notably, in their respective proposed orders vis-à-vis the initial modification motions, both parties requested that the court impose restrictions with respect to the filing of motions for modification. The plaintiff requested an order providing that (1) neither party was permitted to file motions for modification of custody, child support, or the parenting schedule for a period of five years, unless there was an " 'emergency' involving the safety and the physical well-being of the minor child," in which case the movant was required to file a request for leave to file a motion for modification pursuant to Practice Book § 25-26 (g), and (2) either party could file motions for modification of custody, child support, or the parenting schedule after five years, provided that attendant requests for leave were filed in accordance with § 25-26 (g). The defendant requested an order providing that, in the event that a dispute arose between the parties regarding "the health, education, or general welfare of the child," the parties were required to attend at least five counseling sessions with a co-parenting counselor before filing any motion to modify.

[16] The defendant also asserts that the Practice Book § 25-26 (g) order will lead to unnecessary and harmful delays. This argument is unavailing. As noted in footnote 15 of this opinion, the defendant requested an order requiring the parties to participate in a minimum of five counseling sessions before filing a motion for modification. Such an order, if issued, unquestionably would have caused significant delays if either party sought to file a motion to modify.

[17] The defendant proposes four different dates as starting points from which the court should have considered whether a material change in circumstances had occurred: (1) February 6, 2020, when the evidentiary record closed as to the initial modification motions; (2) February 26, 2020, when the court issued the interim orders; (3) March 10, 2020, when Governor Ned Lamont declared a public health emergency and a civil preparedness emergency regarding the COVID-19 pandemic throughout the state; see *Gonzalez* v. *Commissioner of Correction*, 211 Conn. App. 632, 635, 273 A.3d 252, cert. denied, 343 Conn. 922, 275 A.3d 212 (2022); or (4) March 18, 2020, when the chief court administrator issued a statement providing that, effective March 19, 2020, Superior Court operations were limited to "Priority 1 functions" in certain designated buildings. Statement from Judge Patrick L. Carroll III, Chief Court Administrator (March 18, 2020), available at https://jud.ct.gov/HomePDFs/JudgeCarrollStatement.pdf (last visited October 3, 2022).

[18] The defendant's motion to open the evidence stated that there was "newly discovered evidence concerning the plaintiff's ability to care for the child . . . ." The defendant has not raised a claim on appeal challenging the court's denial of the motion to open the evidence.

[19] We address the defendant's separate claim as to the denial of the May 8, 2020 modification motion in part III of this opinion.

[20] In her principal appellate brief, the defendant suggests that she is not certain that a hearing on the May 8, 2020 modification motion is necessary. As the defendant states, "[b]y the time this appeal is resolved, perhaps mask

wearing and social distancing will be a concern of the past, *and maybe there will be no present reason for a hearing on the* [*May 8, 2020 modification motion*]. . . . [If the matter is remanded for a hearing, she] can decide at that time whether or not she still wants to proceed based on present circumstances." (Citation omitted; emphasis added; footnote omitted.)

---