******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

CHRISTINA DOLAN *v.* RUSSELL J. DOLAN
(AC 43674)

Alvord, Alexander and Vertefeuille, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's motions for modification and appellate attorney's fees. The parties had one minor child together. At the time of the dissolution, the plaintiff lived in West Hartford and the defendant lived in Andover, Massachusetts. Incorporated into the judgment of dissolution was a separation agreement which provided that, following the completion of the child's 2018-2019 academic year, the plaintiff would relocate to an area within one hour from her place of employment in Hartford, and that the defendant would make efforts to explore relocation to an area in Massachusetts such that the parties were to be within thirty minutes of each other. Subsequently, the plaintiff filed a motion for modification alleging a change in circumstances in her employment, namely, that she received a promotion and that she would no longer be able to relocate and maintain her employment. She requested that she and the minor child be permitted to remain residing in West Hartford. Following a hearing, the court granted the plaintiff's motion, and the defendant appealed to this court. The trial court then granted the plaintiff's motion for attorney's fees to defend the appeal and the defendant amended his appeal. *Held*:

1. The trial court did not abuse its discretion in granting the plaintiff's motion for modification, as the plaintiff's promotion represented a substantial change in circumstances that warranted modification of the parties' dissolution agreement with respect to parenting access and location: the court credited the testimony of the plaintiff regarding her promotion, which provided her an increase in salary and provided potential career growth, but no longer allowed her to work remotely on a routine basis and relocate to Massachusetts as the parties originally intended, and that she had looked into employment elsewhere, but that she would be starting from the bottom; moreover, the court also made factual findings that directly addressed factors related to the best interests of the child, including that the plaintiff's financial stability was in the best interests of the child, the plaintiff's financial independence was critical given that the defendant's failure to ensure that she had timely access to funds following the divorce put her in a vulnerable financial position, and that it was in the best interests of the child to continue residing primarily in the Hartford area, supported by the plaintiff's testimony as to the child's academic progress, friendships with children in the neighborhood and at school, relationships with teachers at school and after-school childcare, and involvement in sports.

2. The trial court did not abuse its discretion in awarding the plaintiff attorney's fees to defend the appeal; the court expressly and reasonably found that its failure to award attorney's fees would undermine its prior financial orders, and such finding was supported by the record, namely, the plaintiff's testimony that, in order to pay her counsel fees, she had obtained funds from her investments and retirement account, the assets that had been awarded to her in the dissolution.

Argued February 3—officially released March 29, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Miller, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Margaret Murphy, J.*, granted, inter alia, the plaintiff's motion for modifica-

tion, and the defendant appealed to this court; subsequently, the court, *Margaret Murphy, J.*, granted the plaintiff's motion for appellate attorney's fees, and the defendant filed an amended complaint. *Affirmed.*

*David V. DeRosa*, for the appellant (defendant).

*Brandy N. Thomas*, with whom, on the brief, was *Jennifer Shukla*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. In this dissolution matter, the defendant, Russell J. Dolan, appeals from the judgment of the trial court granting two postjudgment motions filed by the plaintiff, Christina Dolan. On appeal, the defendant claims that the court improperly granted the plaintiff's (1) motion for modification and (2) motion for appellate attorney's fees. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married in 2008 and have one minor child together. In 2017, the plaintiff commenced a dissolution action against the defendant. On January 23, 2018, the trial court, *Miller, J.*, rendered a judgment of dissolution, which incorporated a January 22, 2018 separation agreement executed by the parties (agreement). At the time of the dissolution, the plaintiff lived in West Hartford, and the defendant lived in Andover, Massachusetts. Pursuant to Section III of the agreement, the parties agreed that the plaintiff would relocate, following the completion of the 2018-2019 academic year, "to a location such that [the plaintiff] is living approximately but not farther than one (1) hour from her place of employment in Hartford, Connecticut and shall include the Greater Worcester Area and suburbs such as Westborough, Massachusetts." The defendant agreed to "make efforts to explore relocation to an area in Massachusetts such that the parties are within thirty (30) minutes of each other." The parties were to "communicate with each other regarding their respective residences by May 1, 2019."

From the date of the dissolution judgment through the contemplated 2019 relocation, the parties agreed that the defendant would have parenting time on certain dates, generally consisting of two or three weekends per month during the school year. For summer, 2018, the parties agreed to shared parenting time according to a two week on/two week off schedule. The parties agreed that, commencing upon the contemplated 2019 relocation, the parties would share a "5, 2, 2, 5" schedule, as follows: "The parties shall share weekday time such that one parent shall have parenting responsibility every Monday and Tuesday, and the other parent shall have parenting responsibility every Wednesday and Thursday, and the parties shall alternate weekend parenting time from after school, or at an agreed upon time, through Monday morning returning to school. The parties shall cooperate to determine which weekday blocks each parent shall have based on [the plaintiff's] work schedule such that she shall have the weekday blocks wherein she is working remotely, if remote work [is] available to her." For summer, 2019, the parties agreed that the regular access schedule was to prevail, except with respect to vacations, set forth in a separate

provision of the agreement. The parties were to make every effort to agree on the location of the minor child's school.[1] If the parties were unable to reach a schooling agreement, a decision was to be made by the court.

In the event that the defendant did not relocate to an area near the plaintiff's relocated residence, the parties agreed that "the parenting plan shall be reviewed to adjust parenting time and the access schedule so as to maintain liberal parenting time for both parents, but to minimize the amount of travel required for the child during the week." The court would "retain jurisdiction to determine an appropriate shared parenting schedule pursuant thereto, in the event the parties are unable to agree." The agreement "contemplated that [the defendant] will exercise more parenting time than [the plaintiff] during non-school periods to make up for less time during school periods." In the event the parties were unable to reach an agreement as to a shared parenting schedule, a decision was to be made by the court.

On April 30, 2019, the plaintiff filed a motion for modification. Therein, she alleged, inter alia, that "[s]ince the entry of judgment, there has been a change in circumstances such that a relocation of the minor child from his current location of residence, school district and community is no longer in his best interests," and that the plaintiff's "employment circumstances have changed such that she will no longer be able to relocate and maintain her employment." The plaintiff requested that she and the minor child be permitted to remain residing in West Hartford and sought a parenting access plan that was in the best interests of the child.

On July 29, 2019, the court held a hearing on the plaintiff's motion for modification along with other motions filed by the parties, including the plaintiff's motion for contempt, and the defendant's motions for order, modification of custody, and contempt. On October 30, 2019, the court issued its memorandum of decision on all pending motions. Foundationally, the court found the plaintiff "more willing to compromise, especially when it relates to their son's well-being," and also made an overall finding that the plaintiff was more credible than the defendant. The court found "that much of the [defendant's] testimony was self-serving and an attempt to obfuscate his manipulation of the [plaintiff] regarding financial matters and the parenting schedule." The court first considered the plaintiff's motion for contempt. The court found the defendant in contempt for violating the provision of the agreement prohibiting demeaning, denigrating, or otherwise maligning language toward the other parent, on the basis of evidence of his verbal abuse toward the plaintiff in the form of tirades in which he referred to her as "trash" and "scumbag trash." The court found that the defendant had "no self-awareness or insight that his

behavior toward the plaintiff was uncivil, demeaning, and denigrating."

The court referenced the defendant's "out of line" demands, made during the plaintiff's parenting time, to spend time with the parties' child during her family vacation in Florida. The court found that the defendant made multiple threats to contact the police in the event that the plaintiff failed to respond to him. The court found that the plaintiff, in an effort to appease the defendant, agreed to permit him to take their child to a zoo, a trip that she had planned to take with her family. The court was concerned by the defendant's "unreasonable demands and anger shown in almost all of his e-mails and texts to the [plaintiff]," and concluded that his "overall lack of civility toward the plaintiff interferes with his coparenting obligations and his ability to act in the best interest of their son." The court also found the defendant in contempt for his failure to contribute $1000 monthly to the mortgage on the former marital home, as required by the agreement.[2] The court found that the defendant was "intentionally keeping the money from the plaintiff," that his actions were "egregious, and [that] he put her in financial peril."[3]

With respect to the plaintiff's motion for modification at issue in this appeal, the court found that "the plaintiff's employment circumstances have changed substantially and she can no longer relocate to Massachusetts and maintain her employment as the parties originally intended." The court credited the plaintiff's testimony regarding her work circumstances, including the promotion she obtained through her employer following the entry of the dissolution judgment. Although she was able to work remotely in her prior position, her new position did not permit remote work on a routine basis.[4] The court found that the plaintiff's new position constituted "a substantial improvement based on her increased salary and potential career growth." The court credited the plaintiff's testimony that "if she looked for work in the health care industry in Massachusetts to be closer to the defendant, she would have to start at the bottom and would not earn enough money to maintain the standard of living that she and her son enjoy in Connecticut." Acknowledging the defendant's argument that accepting the promotion was not mandatory for the plaintiff, the court found the promotion to be a "legitimate stepping stone in the [plaintiff's] career" and "a significant opportunity for her." The court found it to be both in the plaintiff's and the child's best interests for the plaintiff to accept the promotion to be better able to provide financially for her and the minor child.

The court further found that "maintaining [the plaintiff's] financial independence is critical to her financial stability and her stability is in the best interest of the child," and that the defendant had "put the [plaintiff] in a vulnerable financial position" when he wilfully

failed to contribute $1000 monthly to the mortgage payment on the former marital home as required by the agreement. The court previously had found that the defendant "intentionally" kept the money from the plaintiff,[5] forcing her to file a motion for contempt to address his failure to pay his court-ordered portion of the mortgage. The court found that the defendant's failure to fulfill his fiscal obligation was egregious and put the plaintiff in financial peril.

In addition to the financial considerations set forth by the court, the court found that it was in the child's best interests to continue residing primarily with the plaintiff in the Hartford area. The court credited evidence that the child was doing well under the current parenting plan, and noted that it had heard testimony regarding the child's academic progress, friendships, after-school childcare, sports, and activities in the community.

In granting the plaintiff's motion for modification, the court stated that the relocation provision of the parenting plan would no longer apply, and it vacated the provisions of the parenting plan setting forth the parenting schedule following the relocation, including the summer access schedule for 2019 and the future. The court then stated: "Because the parents will not be moving closer to each other, the '5, 2, 2, 5' parenting plan anticipated in [the agreement] is no longer appropriate. The custody agreement shall be modified so that the [defendant] shall have parenting time with the child every other weekend as well as the division of summer, vacations, and holidays as provided by the agreement prior to relocation." The court applied the agreement's summer, 2018 schedule to future summers. The defendant filed a motion to reargue, which was denied. This appeal followed.

On January 2, 2020, the plaintiff filed a motion for counsel fees to defend the appeal, and the defendant thereafter filed an objection. Following a hearing on February 18, 2020, the court ordered the defendant to pay $7700 of the plaintiff's appellate attorney fees. The defendant then amended his appeal, challenging the award of attorney's fees.

I

The defendant's first claim on appeal is that the court abused its discretion in granting the plaintiff's motion for modification. Specifically, the defendant argues: "The court's finding that the plaintiff obtaining a promotion at work is a substantial change of circumstances to justify a modification is not a proper reading of the [agreement] which anticipated both [the] plaintiff's relocation, maintaining employment, or obtaining a promotion at Hartford Hospital or some other employer. The modification undermines the agreement's premise that the parties relocate to a location in Massachusetts . . .

that would permit increase[d] contact for both parents with their child for whom they agreed to have joint custody." We are not persuaded that the court abused its discretion.

We first set forth relevant principles of law and our standard of review. General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. General Statutes (Rev. to 2019) § 46b-56 (c) directs the court, when making or modifying any order regarding the custody, care, education, visitation and support of children, to "consider the best interests of the child, and in doing so [the court] may consider, but shall not be limited to, one or more of [sixteen enumerated] factors[6]. . . . The court is not required to assign any weight to any of the factors that it considers . . . ." (Footnote added.).

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . [I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion." (Internal quotation marks omitted.) *M. S.* v. *P. S.*, 203 Conn. App. 377, 397, 248 A.3d 778, cert. denied, 336 Conn. 952, 251 A.3d 992 (2021). "[T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Zhou* v. *Zhang*, 334 Conn. 601, 632–33, 223 A.3d 775 (2020).

"The trial court has the opportunity to view the parties [firsthand] and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Internal quotation marks omitted.) *M. S.* v. *P. S.*, supra, 203 Conn. App. 398.

The defendant's primary contention is that "[t]he premise in the modification motion that the plaintiff

. . . obtained a promotion . . . and that the seven year old son had increased social connections in the second grade was not a basis for a substantial change of circumstances under the separation agreement because the prospects of the plaintiff . . . for a change of employment or promotion . . . was considered by the parties when they negotiated the separation agreement." We disagree and conclude that the court did not abuse its discretion in finding a substantial change in circumstances on the basis of the plaintiff's promotion and in determining that it was in the best interests of the child to remain residing with the plaintiff in the Hartford area.

The court credited the testimony of the plaintiff regarding her promotion. Specifically, the plaintiff testified that the promotion provided her an increase in her salary, which was necessary given that she was living "paycheck to paycheck" at the time. At the time of the dissolution, the plaintiff was working in a position that permitted her to work remotely on a routine basis, up to two or possibly three days per week. The plaintiff testified that, following her promotion in October, 2018, she managed a team of eight people and no longer had the ability to work remotely on a routine basis. The court expressly credited the plaintiff's testimony that she had looked into employment elsewhere, but that she would "be starting from the bottom."

On the basis of this testimony, the court found that the plaintiff's promotion was "a substantial improvement based on her increased salary and potential career growth" and that her employment circumstances had changed substantially such that she no longer could relocate to Massachusetts and maintain her employment as the parties originally had intended.[7] On the basis of its factual findings and the substantial evidence to support such findings, the court did not abuse its discretion in determining that the plaintiff's promotion represented a substantial change in circumstances that warranted modification of the parties' dissolution agreement with respect to parenting access and location.[8]

In addition to the factual findings regarding the plaintiff's promotion, the court also made factual findings that directly address factors related to the best interests of the child. First, the court found that the plaintiff's financial stability was in the best interests of the child. The court found the plaintiff's financial independence to be "critical," given that the defendant's "failure to ensure that [she] had timely access to funds following the divorce put [her] in a vulnerable financial position." Specifically, the court found that the defendant wilfully had failed to contribute $1000 monthly to the plaintiff's mortgage payment as required by the agreement, leaving the plaintiff to make the full mortgage payments without his court-ordered contributions. Thus, the

plaintiff's acceptance of the promotion was in the child's best interests because it would allow the plaintiff to better provide financially for her and the parties' child.

Moreover, the court found that it was in the best interests of the child to continue residing primarily with the plaintiff in the Hartford area. The court's findings were supported by the plaintiff's testimony as to the child's academic progress, friendships with children in the neighborhood and at school, relationships with teachers at school and after-school childcare, and involvement in sports.[9] Following its finding that remaining in the Hartford area was in the best interests of the child, the court, having found that the child was doing well under the current parenting plan, appropriately continued a similar parenting time schedule as had been in place at the entry of the dissolution judgment.[10]

On the basis of the court's factual findings, which find support in the record, the court did not abuse its discretion in granting the plaintiff's motion for modification.

II

The defendant's second claim on appeal is that the court erred in awarding appellate attorney's fees to the plaintiff. We disagree.

The following additional procedural history is relevant to this claim. On January 2, 2020, the plaintiff filed a motion for counsel fees to defend the present appeal, arguing that her "ability to fully and fairly advance her interests, and/or prepare for and proceed with defending against the appeal in this matter will be prejudiced without contribution from the defendant to fund her legal representation" and that "not awarding attorney's fees to defend against the defendant's appeal would undermine the court's previous orders and unjustly burden the plaintiff." The defendant filed an objection, arguing that the plaintiff has ample liquid assets and income available to defend the appeal.

On February 18, 2020, the court held a hearing, during which both parties testified and submitted updated financial affidavits. The plaintiff testified that, in order to pay her appellate counsel fees, she had used investment and retirement assets that had been awarded to her in the dissolution. Specifically, she testified that she had obtained funds from her investments and taken a loan on her 401 (k) account. The plaintiff further testified she was living "paycheck to paycheck" and sought $10,000 in counsel fees to defend the appeal.

After closing argument, the court, in an oral ruling, ordered the defendant to pay $7700 of the plaintiff's attorney's fees, on the basis that the failure to award attorney's fees would undermine the court's prior financial orders. The court thereafter issued a written order to the same effect, noting that it had reviewed the crite-

ria of General Statutes §§ 46b-62 and 46b-82, which govern the award of attorney's fees in family court proceedings, and relevant case law.

We first set forth applicable legal principles and our standard of review. "In dissolution and other family court proceedings, pursuant to § 46b-62 (a), the court may order either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the equitable criteria set forth in § 46b-82, the alimony statute. That statute provides that the court may consider 'the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81' for the assignment of property. General Statutes § 46b-82. Section 46b-62 (a) applies to postdissolution proceedings because the jurisdiction of the court to enforce or to modify its decree is a continuing one and the court has the power, whether inherent or statutory, to make allowance for fees." *Leonova* v. *Leonov*, 201 Conn. App. 285, 326–27, 242 A.3d 713 (2020), cert. denied, 336 Conn. 906, 244 A.3d 146 (2021).

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . ." (Internal quotation marks omitted.) *M. S.* v. *P. S.*, supra, 203 Conn. App. 402–403. "[A]n award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." *Ramin* v. *Ramin*, 281 Conn. 324, 352, 915 A.2d 790 (2007).

"A trial court is not limited to awarding fees for proceedings at the trial level. Connecticut courts have permitted postjudgment awards of attorney's fees to defend an appeal." *Leonova* v. *Leonov*, supra, 201 Conn. App. 327. "Whether to allow counsel fees, [under § 46b-62 (a)], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) Id.

In the present case, the trial court expressly found

that its failure to award attorney's fees would undermine the court's prior financial orders. The court's finding is supported by the record, namely, the plaintiff's testimony that, in order to pay her counsel fees, she had obtained funds from her investments and taken a loan on her 401 (k), the assets that had been awarded to her in the dissolution. Thus, the trial court reasonably determined that the fee award was necessary to avoid undermining the trial court's prior financial orders.

Accordingly, we conclude that the court did not abuse its discretion in awarding the plaintiff attorney's fees to defend the present appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The agreement further provided: "In the event [the defendant] does not relocate to an area near to [the plaintiff] as set forth above, the minor child shall attend school in [the plaintiff's] school district, as determined by her then residence. [The plaintiff] agrees to consider the school district in choosing a location to reside."

[2] Related to the finding of contempt, the court granted the plaintiff's request for attorney's fees pursuant to General Statutes § 46b-87.

[3] The plaintiff alleged a number of other grounds in her motion for contempt. Although the court declined to find the defendant in contempt on the other grounds alleged, the court exercised its remedial authority to make changes to the agreement with respect to the parties' communication with the child and the pickup time after the defendant's parenting time, and the court reminded the parties of its order that the parties are to communicate using Our Family Wizard.

With respect to the other motions of the parties, the court denied the defendant's motion for order, which sought a court order that the child be enrolled in treatment with a mental health professional. The court also denied the defendant's motion for modification of custody, wherein the defendant had requested sole legal custody of the parties' child. The court denied the defendant's motion for contempt, wherein he alleged that the plaintiff had violated the agreement by failing to sell the former marital home. The court determined that the defendant's motion for contempt alleging that the plaintiff had failed to relocate in accordance with the agreement was moot, on the basis that the court had granted the plaintiff's motion to modify the agreement to vacate the relocation provisions.

[4] The court found that, in her new position, the plaintiff was responsible for "supervising a team of eight people, in addition to assisting her employer with the integration of a new acquisition by the company and assisting with the hiring of additional staff."

[5] The court found not credible the defendant's testimony that he had made deposits to a bank account in the parties' joint names, noting that the defendant did not list on his financial affidavit a joint bank account.

[6] The statutory factors are as follows: "(1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences,

or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b." General Statutes (Rev. to 2019) § 46b-56 (c).

[7] The defendant argues in his appellate brief that the trial court should have applied the factors contained in General Statutes § 46b-56d, which applies to postjudgment relocation cases. Section 46b-56d provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and *involving the relocation of either parent with the child*, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements." (Emphasis added.)

Because the present case does not involve the "relocation of either parent with the child"; General Statutes § 46b-56d (a); but rather the request of the plaintiff not to relocate, as contemplated at the time of dissolution, the trial court did not err in failing to analyze the motion under § 46b-56d.

[8] We note that we are not presented in this appeal with the issue of whether the trial court was obligated to make a threshold finding of a substantial change in circumstances in resolving the motion the plaintiff presented to the court in this case.

[9] The defendant argues that the court's decision is "in contravention of Connecticut's public policy by rewarding the [plaintiff] in what the record reveals is her vindictive desire to interfere in the relationship between the noncustodial parent and child." We disagree that the record reflects a vindictive desire on behalf of the plaintiff to interfere with the relationship between the defendant and the parties' child. As noted previously, the court credited the plaintiff's testimony and found her "more willing to compromise, especially when it relates to their son's well-being." In contrast, the court found the defendant's testimony "self-serving" and an attempt "to obfuscate his manipulation of the [plaintiff] regarding financial matters and the parenting schedule." "The trial court has the great advantage of hearing the witnesses and in observing their demeanor and attitude to aid in judging the credibility of testimony. . . . Great weight is given to the conclusions of the trial court which had the opportunity to observe directly the parties and the witnesses." (Internal quotation marks omitted.) *Lopes* v. *Ferrari*, 188 Conn. App. 387, 393, 204 A.3d 1254 (2019).

[10] The defendant argues that, even if a modification was appropriate, the court erred in "remov[ing] one of the three weekends where the [defendant] has custody of his son . . . ." We disagree.

Pursuant to the agreement, the defendant had parenting time with the child on certain specified weekends, either two or three per month. From the date of the dissolution judgment through the end of 2018, not including the summer, the defendant's parenting time included: one weekend each in January and August; two weekends each in May, September, October, and December; and three weekends each in February, March, April, and November. For summer, 2018, the parties rotated parenting time on a two week on/two week off schedule. For 2019, through the end of the school year, the defendant's parenting time included: one weekend in June; two weekends each in January, April, and May; and three weekends each in February and March. In granting the motion for modification, rather than enumerating certain dates on which the defendant would have parenting time, the court

appropriately ordered that the defendant would have parenting time with the child "every other weekend." Accordingly, we reject the defendant's contention that the court's order reflects an appreciable diminution in his parenting time, and we conclude that the court's order regarding parenting time was well within its discretion.

———————————————